# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISON

|  |  |
|---|---|
| MICRO ENHANCED TECHNOLOGY, INC., an Illinois corporation, | |
| Plaintiff, | Civil Action No.  11-cv-6371 |
| vs. | **JURY TRIAL DEMANDED**<br>Hon. John W. Darrah |
| MORNING INDUSTRY, INC., a California corporation, MENARD, INC., a Wisconsin corporation, | |
| Defendants. | |

## DEFENDANT MORNING INDUSTRY INCORPORATED'S ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

Defendant Morning Industry Incorporated ("Morning") answers the allegations of the numbered paragraphs of the Complaint for Patent Infringement ("Complaint") of Plaintiff Micro Enhanced Technology, Inc. ("Plaintiff") as follows:

## PARTIES

1.     Plaintiff, Micro Enhanced Technology, Inc. ("MET") is an electronic security and locking device manufacturer incorporated under the laws of the State of Illinois with its principal place of business in this district.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them.

2.     On information and belief, Defendant, Morning Industry, Inc. ("Morning Industry") is a corporation incorporated under the laws of the State of California with its principal place of business located at 270 S. 5th Ave., La Puente, CA 91746.

**ANSWER:**    Admitted.

3.      On information and belief, Defendant, Menard, Inc. ("Menards") is a corporation incorporated under the laws of State of Wisconsin with its principal place of business located at 5101 Menard Drive, Eau Claire, Wisconsin 54703.

**ANSWER:**      Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them.

### JURISDICTION AND VENUE

4.      This is a civil action brought by MET for patent infringement committed by Defendants Morning Industry and Menards, and arising under the patent laws of the United States, specifically, 35 U.S.C. §§ 271 *et seq.*

**ANSWER:**      Paragraph 4 states a conclusion of law to which no response is necessary. With respect to all remaining allegations, Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patents).

**ANSWER:**      Paragraph 5 states a conclusion of law to which no response is necessary.

6.      This Court has personal jurisdiction over this action pursuant to the Illinois Long Arm Statute, 735 ILCS 5/2-209(a)(1)-(2) and (c) because, among other things, Morning Industry and Menards transact business in this judicial district, at least by offering to sell, selling and advertising locks and lock systems at least through the internet in such a way as to reach customers in Illinois and this district.

**ANSWER:**      Paragraph 6 states a conclusion of law to which no response is necessary. With respect to all remaining allegations, Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them.

For purposes of this litigation only, Morning does not contest personal jurisdiction.

7.      Venue is proper under 28 U.S.C. §1391(b), (c), and 1400(b) because Morning Industry and Menards are subject to personal jurisdiction in this district, and a substantial part of the events giving rise to the claim occurred here.

**ANSWER:** Paragraph 7 states a conclusion of law to which no response is necessary. With respect to all remaining allegations, Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them. For purposes of this litigation only, Morning does not contest venue.

8.     On information and belief, Defendant Morning Industry makes, uses, sells, and offers for sale infringing electronic lock systems such as Morning Industry's HKK Series, HF Series, QKK Series, QF Series, RKK Series, and RF Series locks (collectively Morning Industry lock systems).

**ANSWER:** Morning admits that it currently sells and offers for sale the HF Series, HKK Series, QF Series, and QKK Series, and denies the remaining allegations of this paragraph.

9.     On information and belief, Morning Industry's lock systems are available for purchase or offered for sale in the United States and/or in this district through Morning Industry's website www.morningindustry.com or an authorized agent and e-retailer websites thereof, including under the trademark TRU-BOLT, which is believed to be sold through Menards' store and Menards' website www.menards.com in this district.

**ANSWER:** Morning admits that some of its products are available for purchase or offered for sale in the United States, some of its products bear Menard's trademark TRU-BOLT, and some of its products are sold through Menards store and Menard's website, but otherwise denies the remaining allegations of this paragraph.

10.     On further information and belief, Morning Industry's HF Series, HKK Series, QKK Series, and QF Series are available for purchase or offered for sale in the United States and/or in this district through Menards' website www.menards.com.

**ANSWER:** Morning admits that it currently sells and offers for sale in the United States the HF Series, HKK Series, and QKK Series through Menards' website, and denies the remaining allegations of this paragraph.

11.     Defendant Morning Industry's lock systems are advertised on Morning Industry's website (www.morningindustry.com) and described in its marketing materials, product manuals and similar literature.

**ANSWER:**     Morning admits that some of its products are advertised on its website

(www.morningindustry.com) and described in its marketing materials, product manuals and

similar literature, but otherwise denies the remaining allegations of this paragraph.

12.     Upon information and belief, Defendant Morning Industry, directly and/or through
intermediaries, has for a time past and still is purposefully shipping, selling, and/or offering for
sale the Morning Industry lock systems such as HKK Series, HF Series, KL Series, QKK Series,
RKK Series, RF Series, as well as the previously available PKF Series, PAKK Series, PAKL
Series, KF Series, AKL Series, and AKK Series in the United States and the State of Illinois,
and, more specifically, in this district in competition with MET's products.

**ANSWER:**     Morning admits that it previously sold the HKK Series, HF Series, KL Series,

QKK Series, RKK Series, RF Series, PKF Series, PAKK Series, PAKL Series, KF Series, AKL

Series, and AKK Series in the United States, and currently sells and offers for sale in the United

States the HF Series, HKK Series, QKK Series, and some of the remaining units in stock of the

discontinued models KL Series, RKK Series, RF Series, PKF Series, PAKK Series, PAKL

Series, KF Series, AKL Series, and AKK Series.  Morning denies the remaining allegations of

this paragraph.

## BACKGROUND

### U.S. Patent No. 5,617,082

13.     On April 1, 1997, U.S. Patent No. 5,617,082 ("the '082 patent"), attached hereto as
Exhibit A, entitled "Electronic Access Control Device Utilizing a Single Microcomputer
Integrated Circuit," was duly and legally issued, on an application filed by William D. Denison
et al.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

14.     MET is the owner of all right, title, and interest in the '082 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

15. The '082 patent claims the invention of an electronic access control system for controlling a lock, as set forth in columns 9 through 12 of the '082 patent.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

16. Recently, MET evaluated Defendant Morning Industry's lock systems and determined that Defendant Morning Industry's lock systems each includes an electronic access control system for controlling a lock. The accused infringing products include at least the RF Series and RKK Series lock systems as well as the KF Series lock systems available under the TRU-BOLT trademark. Each lock system includes a deadbolt lock and remote key.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

17. Morning Industry's lock system includes a control station (the remote key) that is placed in a mode whereby it transmits an access code via a radio frequency signal (RF Series and RKK Series) or an infrared signal (KF Series).

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

18. Morning Industry's deadbolt units are each remote stations that are powered by a battery in the deadbolt unit and are not physically connected to the remote key.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

19. Morning Industry's deadbolt units also include input electronics consisting of an RF receiver, part number RX3310A in the RF Series and RKK Series; or an IR receiver in the KF Series (means for sensing an input signal), and a microcomputer, PIC16LF677 (RF Series and RKK Series) or PIC16F630 (KF Series), containing a timer.

**ANSWER:** Morning admits that the RF Series and the RKK Series include part number

RX3310A, and the KF Series includes part number PIC16F630. Morning is without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations of this

paragraph and on that basis denies them.

20.     Morning Industry's deadbolt unit in the RF Series and RKK Series has two states; the first of which lasts for 44 milliseconds, during which RF receiver is connected to the battery allowing the deadbolt unit to receive signals from the remote key; and the second of which lasts for 448 milliseconds, during which time the RF receiver is disabled via a shutdown mode and will not receive signals from the remote key.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

21.     Morning Industry's deadbolt unit in the KF Series has two states. During the first state, the IR receiver in the deadbolt draws 96 microamps. Once a signal is sensed, it is converted into pulses and sent to an amplifier and the current draw increases to 120 microamps for a period of time and then increases to 31 milliamps as the processor or decoder obtains the signal and controls the lock.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

22.     The RF receiver in the RF Series and RKK Series systems also acts as a transducer to receive the radio frequency signal and converts the signal into a series of radio frequency pulses which are sent to a decoder pin of the microcomputer.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

23.     Morning Industry's deadbolt units include processing means in the microcomputer such that when an input signal is received from the remote key, it is compared to a value stored in a memory contained in the deadbolt unit.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

24.     The processing means of the deadbolt unit then activates a motor in the deadbolt unit (means for output) if the input code is equal to the code value stored in the memory.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

25.     The signal transmitted between the remote key and the deadbolt unit of the KF Series is an infrared frequency wave.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

<u>U.S. Patent No. 6,977,576</u>

26. On December 20, 2005, U.S. Patent No. 6,977,576 ("the '576 patent"), attached hereto as Exhibit B, entitled "Electronic Access Control Device," was duly and legally issued, on an application filed by William D. Denison, et al.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

27. MET is the owner of all right, title, and interest in the '576 patent.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

28. The '576 patent claims the invention of an electronic lock, as set forth in columns 18 through 22 of the '576 patent.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

29. Defendant Morning Industry's infringing products recently evaluated by MET include at least the PKF Series, HKK Series, QKK Series, QKF Series, HF Series, and QF Series lock systems.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

30. The infringing lock systems each include deadbolt unit having a keypad. The deadbolt unit also includes a microprocessor (PIC16F630) that has a non-volatile memory and can be programmed with a 2-8 digit code.

**ANSWER:** Morning admits that the PKF Series, HKK Series, and HF Series include part

number PIC16F630. Morning is without knowledge or information sufficient to form a belief as

to the truth of the remaining allegations of this paragraph and on that basis denies them.

31.    When the 1-key (or any digit key) of the keypad is pressed, a wake-up signal is sent to the microprocessor and the microprocessor exits a sleep mode.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

32.    The microprocessor is woken up for approximately 6 seconds to receive an input code. The input code, entered via the keypad, is compared to the stored 2-8 digit code and if the codes match, generates a signal to send to a motor in the deadbolt unit.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

33.    After the approximately 6 second wake period, the microprocessor enters a sleep mode. During the wake period, the microprocessor draws approximately 0.54 milliamps; during the sleep mode, the microprocessor draws approximately 77 microamps.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

34.    The deadbolt units also include a low battery detect circuit that is controlled by the microprocessor. The microprocessor activates the low battery detect circuit while in the wake mode and deactivates the battery detect circuit when in the sleep mode.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

U.S. Patent No. 7,019,615

35.    On March 28, 2006, U.S. Patent No 7,019,615 ("the '615 patent"), attached hereto as Exhibit C, entitled "Electronic Access Control Device," was duly and legally issued, on an application filed by William D. Denison et al.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

36.    MET is the owner of all right, title, and interest in the '615 patent.

**ANSWER:**    Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

37.     The accused infringing products recently evaluated by MET include at least the PKF Series, HKK Series, QKK Series, HF Series, and QF Series lock systems.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

38.     The infringing lock systems each include a microprocessor (PIC16F360) that has a non-volatile memory and can be programmed with a 2-8 digit code.

**ANSWER:**     Morning denies that the PKF Series, HKK Series, QKK Series, HF Series and QF

Series include part number PIC16F360.  Morning is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations of this paragraph and on that basis

denies them.

39.     When the 1-key (or any digit key) of the keypad is pressed, a wake-up signal is sent to the microprocessor and the microprocessor exits a sleep mode.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

40.     The microprocessor is woken up for approximately 6 seconds to receive an input code. The input code, entered via the keypad, is compared to the stored 2-8 digit code and if the codes match, generates a signal to send to a motor in the deadbolt unit.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

41.     After the approximately 6 second wake period, the microprocessor enters a sleep mode. During the wake period, the microprocessor draws approximately 0.54 milliamps; during the sleep mode, the microprocessor draws approximately 77 microamps.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

42.     The deadbolt units also include a low battery detect circuit that is controlled by the microprocessor. The microprocessor activates the low battery detect circuit while in the wake mode and deactivates the battery detect circuit when in the sleep mode.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

<u>U.S. Patent No. 7,295,100</u>

43.    On November 13, 2007, U.S. Patent No. 7,295,100 ("the '100 patent"), attached hereto as Exhibit D, entitled "Electronic Access Control Device," was duly and legally issued, on an application filed by William D. Denison et al.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

44.    MET is the owner of all right, title, and interest in the '100 patent.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

45.    The accused infringing products recently evaluated by MET include at least the PKF Series, HKK Series, QKK Series, QKF Series, HF Series, and QK Series lock systems sold under the TRU-BOLT trademark.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

46.    Each infringing lock system includes a 6-volt battery pack, a 12-button keypad, an S key for entering a program mode, and a cancel key each provided with a deadbolt unit.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

47.    The deadbolt unit also includes a microprocessor (PIC16F630) with a non-volatile memory used to store a code. The microprocessor is ordinarily (i.e., between operation) in a sleep mode, during which it draws 77 microamps, and is woken up when the S key is pressed.

**ANSWER:** Morning admits that the PKF Series, HKK Series, and HF Series include part

number PIC16F630. Morning is without knowledge or information sufficient to form a belief as

to the truth of the remaining allegations of this paragraph and on that basis denies them.

48.     When in the program mode, the microprocessor accepts a code entered via the keypad and stores that code as an access code in the non-volatile memory.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

49.     The lock system also includes a low battery detect circuit that is enabled when the microprocessor is in a wake mode and is disabled when the microprocessor is in a sleep mode.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

50.     The microprocessor is also woken up when the 1-key (or any digit key 0-9) on the keypad is pressed.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

51.     A communication port connects the keypad to pins 2-6 of the microprocessor for sending data from the keypad to the microprocessor. The data sent from the keypad may include a code to be stored in the non-volatile memory.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

<u>U.S. Patent No. 7,456,725</u>

52.     On November 25, 2008, U.S. Patent No. 7,456,725 ("the '725 patent"), attached hereto as Exhibit E, entitled "Electronic Access control Device Utilizing a Single Microcomputer Integrated Circuit," was duly and legally issued, on an application filed by William D. Denison et al.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

53.     MET is the owner of all right, title, and interest in the '725 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

54.     The accused infringing products recently evaluated by MET include at least the RF Series, RKK Series, and KF Series lock systems.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

55.     Upon information and belief, Morning Industry's lock systems, including the operation of the lock systems, read on the '725 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

56.     Morning Industry's RF Series and RKK Series lock systems include a microprocessor, PIC16LF677, and an RF receiver, part number RX3310. The microcomputer periodically enables the RF receiver every 400 ms for up to 48 ms (t1) and disables the RF receiver after 48 ms if an RF signal is not detected.

**ANSWER:**     Morning denies that the RF Series and the RKK Series include part number

PIC16LF677 and part number RX3310.  Morning is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations of this paragraph and on that basis

denies them.

57.     The RF receiver senses for an RF transmission from a remote key. While receiving an RF signal (containing an access code), the RF receiver is enabled for 800 ms (t2 > t1). The input code is sent from the RF receiver to the microprocessor.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

58.     The microprocessor compares the input code to a stored code and, if they match, provides a signal to a motor to unlock the lock system.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

59.     The lock systems also include a low battery detect circuit that is enabled each time the microprocessor is woken up and activates the motor.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

60. Morning Industry's KF Series lock systems include a microprocessor (PIC16F630) that deactivated when no infrared (IR) signal is detected. While deactivated, the microprocessor draws approximately 96 microamps. When an IR signal is detected, the microprocessor is enabled via a signal from an IR sensor. The microprocessor receives an input code from the IR sensor. As the microprocessor receives the input code, the current draw increases to 31 milliamps.

**ANSWER:** Morning admits that the KF Series includes part number PIC16F630. Morning is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of this paragraph and on that basis denies them.

61. The microprocessor compares the input code to a stored code. If the input code matches the stored code, the microprocessor provides an output to energize a motor to open the lock. After the motor is energized, the microprocessor enters a sleep mode and the current is decreased to approximately 96 microamps.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

62. The lock system also includes a low battery detect circuit that is enabled each time the microprocessor is woken up and activates the motor.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

<u>U.S. Patent No. 7,683,758</u>

63. On March 23, 2010, U.S. Patent No. 7,683,758 ("the '758 patent"), attached hereto as Exhibit F, entitled "Electronic Access Control Device," was duly and legally issued, on an application filed by William D. Denison et al.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

64. MET is the owner of all right, title, and interest in the '758 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

65.     The accused infringing products recently evaluated by MET include at least the RF Series, RKK Series, and KF Series lock systems.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

66.     Morning Industry's lock systems collectively and individually infringe upon the '758 patent. The lock systems each include a deadbolt unit and a remote key.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

67.     On information and belief, the RF Series and RKK Series lock systems each include a radio frequency (RF) receiver (RX3310) that is deactivated via pin 9. The RF receiver is then activated for approximately 44 ms. When an RF signal is detected, the RF receiver generates a signal sent to a microprocessor (PIC16F677). The RF receiver is then enabled for up to 800 ms to receive the entire RF signal.

**ANSWER:**     Morning admits that the RF Series and the RKK Series include part number

PIC16F677.  Morning is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations of this paragraph and on that basis denies them.

68.     During the 800 ms, the RF receiver demodulates the received signal and sends an input code to the microprocessor. The microprocessor is activated for approximately 1.68 second and compares the input code to an access code and, if they match, generates an output signal to activate a motor to unlock the lock system.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

69.     The lock systems also include a low battery detect circuit that is activated every time the microprocessor is woken up and activates the motor.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

70.     On information and belief, KF Series lock systems include an infrared frequency (IR) receiver and a microprocessor (PIC16F630). The microprocessor is ordinarily deactivated. The IR receiver is activated for approximately 2 ms and, if a signal is detected, sends an enable output signal to the microprocessor.

**ANSWER:**     Morning admits that the KF Series includes part number PIC16F630. Morning is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of this paragraph and on that basis denies them.

71.     The microprocessor is then enabled for an extended period of time, up to 1.5 seconds, to process an input code received from the IR sensor.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

72.     The microprocessor compares the input code to a stored access code and, if they match, generates a unlock output signal to energize a motor.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

73.     The lock systems also include a low battery detect circuit that is activated every time the microprocessor is woken up and activates the motor.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

<u>U.S. Patent No. 7,741,952</u>

74.     On June 22, 2010, U.S. Patent No. 7,741,952 ("the '952 patent"), attached hereto as Exhibit G, entitled "Electronic Access Control Device," was duly and legally issued, on an application filed by William D. Denison et al.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

75.     MET is the owner of all right, title, and interest in the '952 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

76.     The '952 patent claims the invention of a battery powered electronic access
control, as set forth in columns 17 through 28 of the '952 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

77.     The accused infringing products recently evaluated by MET include at least the
RF Series, RKK Series, and KF Series lock systems.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

78.     The individual components of the Morning Industry lock systems collectively and
individually infringe the '952 patent. The Morning Industry lock systems include a deadbolt unit
and a remote key.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

79.     On information and belief, the Morning Industry lock systems each include a 6-
volt battery pack and a processor, PIC16F630 or PIC16F677, with a non-volatile memory in the
deadbolt unit. The deadbolt units also include either a radio frequency (RF) receiver (RF Series
and RKK Series) or an infrared (IR) receiver (KF Series). The microprocessor receives an input
signal from the RF or IR receiver via a communication port or pin between the microprocessor
and the RF or IR receiver.

**ANSWER:**     Morning admits that the KF Series includes part number PIC16F630, and the RF

and the RKK Series include part number PIC16F677.  Morning is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of this

paragraph and on that basis denies them.

80.     The microprocessor of the RF Series and RKK Series lock systems is in a sleep
mode for approximately 400 ms and deactivates the RF receiver. Every 40 ms, the
microprocessor wakes up and activates the RF receiver to receive an input code. The input code
is demodulated by the RF receiver and is compared to a stored access code by the

microprocessor. If the input code matches the stored access code, the microprocessor generates a signal to activate a motor to open the lock system.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

81.     The microprocessor of the KF Series lock system is woken up in response to a signal detected by the IR receiver. The microprocessor is awake for approximately 1.5 seconds and receives an input code from the IR receiver The microprocessor compares the input code to a stored access code and, if they match, activates a motor to open the lock system.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

82.     The microprocessor of the RF Series, RKK Series and KF Series lock systems enters a sleep mode after the end of its awake period. While in the sleep mode, the microprocessor draws less current than in the awake mode.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

83.     The RF Series, RKK Series and KF Series lock systems also include a low battery detect circuit that is activated every time the microprocessor is woken up and activates the motor. Each lock system also includes a set switch connected to the microprocessor. When the set switch is pressed, the microprocessor wakes up and enters a program mode and accepts a code from the RF or IR receiver and stores that code as the stored access code. The microprocessor then returns to the sleep mode.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

## Count I – Infringement of U.S. Patent No. 5,617,082

84.     MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**     Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

85.     Upon information and belief, Morning Industry has infringed and continues to infringe the '082 patent, either directly, by contributory infringement and/or by inducement of

others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the RF Series, RKK Series, and KF Series lock systems, covered by the '082 patent.

**ANSWER:**     Denied.

86.     Morning Industry's acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Morning Industry the damages sustained by MET as a result of Morning Industry's wrongful acts in an amount subject to proof at trial. Morning Industry's infringement of MET's exclusive rights under the '082 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**     Denied.

87.     Upon information and believe, Morning Industry's acts of infringement of the '082 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**     Denied.

88.     MET believes that Morning Industry will continue to infringe the '082 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**     Denied.

## Count II – Infringement of U.S. Patent No. 6,977,576

89.     MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**     Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

90.     Upon information and belief, Morning Industry has infringed and continues to infringe the '576 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the PKF Series, HKK Series, QKK Series, QKF Series, HF Series, and QF Series lock system, covered by the '576 patent.

**ANSWER:**     Denied.

91.     Upon information and belief, Menards has infringed and continues to infringe the '576 patent, either directly, by contributory infringement and/or by inducement of others to

infringe. The infringing acts include, but are not limited to, the use, sale, importation, and/or offer for sale of products; including the HF Series, HKK Series, QKK Series, and QK Series lock system, covered by the '576 patent.

**ANSWER:** Morning is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies them.

92.     Defendants Morning Industry's and Menards' acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Defendants the damages sustained by MET as a result of Defendants' wrongful acts in an amount subject to proof at trial. Defendants' infringement of MET's exclusive rights under the '576 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:** Denied.

93.     Upon information and believe, Defendants' acts of infringement of the '576 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:** Denied.

94.     MET believes that Defendants will continue to infringe the '576 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:** Denied.

## Count III – Infringement of U.S. Patent No. 7,019,615

95.     MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:** Morning reincorporates by reference the responses contained in paragraphs 1-83 as if fully set forth herein.

96.     Upon information and belief, Morning Industry has infringed and continues to infringe the '615 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the PKF Series, HKK Series, QKK Series, QKF Series, HF Series, and QF Series lock systems, covered by the '615 patent.

**ANSWER:** Denied.

97.     Upon information and belief, Menards has infringed and continues to infringe the '576 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the use, sale, importation, and/or offer for sale of products; including the HF Series, HKK Series, QKK Series, and QK Series lock system, covered by the '576 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

98.     Defendants Morning Industry's and Menards' acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Defendants the damages sustained by MET as a result of Defendants' wrongful acts in an amount subject to proof at trial. Defendants' infringement of MET's exclusive rights under the '615 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**     Denied.

99.     Upon information and believe, Defendants' acts of infringement of the '615 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**     Denied.

100.     MET believes that Defendants will continue to infringe the '615 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**     Denied.

### Count IV – Infringement of U.S. Patent No. 7,295,100

101.     MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**     Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

102.     Upon information and belief, Morning Industry has infringed and continues to infringe the '100 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the PKF Series, HKK Series, QKK Series, QKF Series, HF Series, and QF Series lock systems, covered by the '100 patent.

**ANSWER:**     Denied.

103.     Upon information and belief, Menards has infringed and continues to infringe the '576 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the use, sale, importation, and/or offer for sale of products; including the HF Series, HKK Series, QKK Series, and QK Series lock system, covered by the '576 patent.

**ANSWER:**     Morning is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph and on that basis denies them.

104.     Defendants Morning Industry's and Menards' acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Defendants the damages sustained by MET as a result of Defendants' wrongful acts in an amount subject to proof at trial. Defendants' infringement of MET's exclusive rights under the '100 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**     Denied.

105.     Upon information and believe, Defendants' acts of infringement of the '100 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**     Denied.

106.     MET believes that Defendants will continue to infringe the '100 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**     Denied.

### Count V – Infringement of U.S. Patent No. 7,456,725

107.     MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**     Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

108.     Upon information and belief, Morning Industry has infringed and continues to infringe the '725 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the RF Series, RKK Series, and KF Series lock systems, covered by the '725 patent.

**ANSWER:**     Denied.

109.    Morning Industry's acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Morning Industry the damages sustained by MET as a result of Morning Industry's wrongful acts in an amount subject to proof at trial. Morning Industry's infringement of MET's exclusive rights under the '725 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**    Denied.

110.    Upon information and believe, Morning Industry's acts of infringement of the '725 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**    Denied.

111.    MET believes that Morning Industry will continue to infringe the '725 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**    Denied.

### Count VI – Infringement of U.S. Patent No. 7,683,758

112.    MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**    Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

113.    Upon information and belief, Morning Industry has infringed and continues to infringe the '758 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the RF Series, RKK Series, and KF Series lock systems, covered by the '758 patent.

**ANSWER:**    Denied.

114.    Morning Industry's acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Morning Industry the damages sustained by MET as a result of Morning Industry's wrongful acts in an amount subject to proof at trial. Morning Industry's infringement of MET's exclusive rights under the '758 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**    Denied.

115.    Upon information and believe, Morning Industry's acts of infringement of the '758 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**    Denied.

116.    MET believes that Morning Industry will continue to infringe the '758 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**    Denied.

### Count VII – Infringement of U.S. Patent No. 7,741,952

117.    MET realleges and incorporates by reference the allegations contained in the paragraphs 1-83 as if fully set forth herein.

**ANSWER:**    Morning reincorporates by reference the responses contained in paragraphs 1-83

as if fully set forth herein.

118.    Upon information and belief, Morning Industry has infringed and continues to infringe the '952 patent, either directly, by contributory infringement and/or by inducement of other to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products; including the RF Series, RKK Series, and KF Series lock systems, covered by the '952 patent.

**ANSWER:**    Denied.

119.    Morning Industry's acts of infringement have caused and continue to cause damage to MET and MET is entitled to recover from Morning Industry the damages sustained by MET as a result of Morning Industry's wrongful acts in an amount subject to proof at trial. Morning Industry's infringement of MET's exclusive rights under the '952 patent will continue to damage MET's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by the Court.

**ANSWER:**    Denied.

120.    Upon information and believe, Morning Industry's acts of infringement of the '952 patent have been willful and deliberate, rendering this an exception case under 35 U.S.C. § 285.

**ANSWER:**    Denied.

121.    MET believes that Morning Industry will continue to infringe the '952 patent unless enjoined by this Court. Such infringing activity causes MET irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**    Denied.

## AFFIRMATIVE DEFENSES

1.    Morning does not infringe and has not infringed any claim of U.S. Patent Nos. 5,617,082, 6,977,576, 7,019,615, 7,295,100, 7,456,725, and 7,741,952 (or collectively, the "Patents-in-Suit"), either literally or under the doctrine of equivalents.

2.    After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that any asserted claims of the Patents-in-Suit are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101 *et. seq.*, including without limitation, the requirements in §§ 101, 102, 103, 112, 115 and/or 116.

3.    After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that Plaintiff is estopped, based on statements, representations, and admissions made during prosecution of the patent application resulting in the Patents-in-Suit from asserting an interpretation of the patent claims that would cover any feature of any accused products.

4.    After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that the Patents-in-Suit and their claims are invalid, void and not infringed because during the prosecution, the Patent Examiner was not fully advised of all pertinent prior art and other material facts known by or readily available to the patentee.

5.    After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that Plaintiff's infringement allegations are barred by the doctrine of laches, waiver, prosecution laches, and/or equitable estoppel.

6.      The Complaint fails to state a cause of action upon which relief can be granted.

7.      After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that Plaintiff's claims for alleged infringement of the Patents-in-Suit are barred or limited due to failure to comply and failure to allege compliance with the requirements of 35 U.S.C. § 287.

8.      After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that all methods, apparatus, and products disclosed but not literally claimed have been dedicated to the public, and Plaintiff is estopped from claiming infringement by any such public domain methods, apparatus, or products.

9.      After a reasonable opportunity for further investigation or discovery, there is likely to be evidence that Plaintiff's claims for injunctive relief are barred in light of the fact that Plaintiff has an adequate remedy at law.

10.      Morning reserves the right to add to, amend or withdraw its affirmative defenses as further investigation or discovery so dictates.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Morning Industry Incorporated ("Morning") asserts these Counterclaims against Plaintiff and Counterclaim Defendant Micro Enhanced Technology, Inc. ("Plaintiff") and complains as follows:

## FACTUAL BACKGROUND

1.      Morning incorporates by this reference all of the allegations and averments of its answer and its affirmative defenses.

2.      This is an action for declaratory judgment of invalidity, and non-infringement of U.S. Patent Nos. 5,617,082, 6,977,576, 7,019,615, 7,295,100, 7,456,725, 7,683,758, and 7,741,952 (or collectively, the "Patents-in-Suit"). This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the patent laws of the United States, Title 35 United States Code.

3.      This Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. § 1338. Personal jurisdiction is proper over Plaintiff because Plaintiff has substantial and continuous contacts with this Judicial District. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

4.      On information and belief, Plaintiff and Counterclaim Defendant is an electronic security and locking device manufacturer incorporated under the laws of the State of Illinois with its principal place of business in this district.

5.      Defendant and Counterclaim Plaintiff Morning is a corporation incorporated under the laws of the State of California with its principal place of business located at 270 S. 5th Ave. La Puente, CA 91746.

6.      Plaintiff claims to be the present owner of all right, title and interest in and to the Patents-in-Suit, including the right to sue and recover damages for infringement.

7.      Plaintiff and its attorneys were under a duty of candor and good faith in dealing with the USPTO during the prosecution of the Patent-in-Suit, which included a duty to disclose to the USPTO all information material to patentability.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

8.      Morning incorporates by this reference all of the foregoing paragraphs of its Counterclaims, and averments of its answer and affirmative defenses.

9.      As a consequence of the foregoing and the allegations in the Complaint, there is an actual and justifiable controversy between Plaintiff and Morning with respect to the alleged infringement of the Patents-in-Suit.

10.      Morning has not and does not infringe, either literally or under the doctrine of equivalents, any valid claims of the Patents-in-Suit.

11.      As a result, a judicial determination is necessary as to Morning's rights to manufacture, use, import, offer for sale and/or sell the products that are accused by Plaintiff, but denied by Morning, as infringing the Patents-in-Suit.

## SECOND CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF INVALIDITY

12.      Morning incorporates by this reference all of the foregoing paragraphs of its Counterclaims, and averments of its answer and affirmative defenses.

13.      As a consequence of the foregoing and the allegations in the complaint, there is an actual and justifiable controversy between Plaintiff and Morning with respect to the validity of the Patents-in-Suit.

14.     Upon information and belief, the Patents-in-Suit are invalid due to the patentee's failure to comply with one or more the following statutory provisions: 35 U.S.C. §§ 101, 102, 103, 112, 115 and/or 116.

15.     As a result, a judicial determination is necessary as to Morning's rights to manufacture, use, import, offer for sale and/or sell the products that are accused by Plaintiff, but denied by Morning, as infringing the Patents-in-Suit.

WHEREFORE, Morning prays for judgment and relief against Plaintiff, including:

a.     That this Court dismiss the Complaint against Morning with prejudice;

b.     That Plaintiff recovers nothing;

c.     A judgment declaring that Morning has not infringed, and is not infringing, the Patents-in-Suit;

d.     A judgment declaring that the Patents-in-Suit is invalid;

e.     A preliminary and permanent injunctions prohibiting Plaintiff, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them from initiating infringement litigation or from threatening the defendants or any of their customers, dealers, agents, servants, or employees with infringement litigation or charging them either verbally or in writing with infringement of the Patents-in-Suit or its claims;

f.     A judgment that this is an exceptional case and that Morning be awarded reasonable attorneys' fees, costs, and expenses against Plaintiff pursuant to 35 U.S.C. § 285; and

g.     That Morning be awarded such further relief as this Court may deem just and equitable.

## JURY TRIAL DEMAND

Morning demands a trial by jury on all issues triable of right by a jury.


Date: November 17, 2011        By:     s/ S. Richard Carden

                             Thomas E. Wettermann (ID No. 6230503)
                             wettermann@mbhb.com
                             S. Richard Carden (ID No. 6269504)
                             carden@mbhb.com
                             MCDONNELL BOEHNEN HULBERT &
                                  BERGHOFF LLP
                             300 S. Wacker Drive
                             Suite 3200
                             Chicago, IL 60606
                             Tel: (312) 913-0001
                             Fax: (312) 913-0002

                             Vic Lin (CA Bar No. 192292)
                             vlin@innovationcaplaw.com
                             Joseph G. Chu (CA Bar No. 249483)
                             jchu@innovationcaplaw.com
                             (*pro hac vice* motions to be filed)
                             INNOVATION CAPITAL LAW GROUP, LLP
                             19900 MacArthur Boulevard, Suite 1150
                             Irvine, CA 92612
                             Tel:  949.954.5430
                             Fax:  949.223.9610

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 17, 2011 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper or emailed copies will be sent to those indicated as non-registered participants.

s/ S. Richard Carden